DE JESÚS, PLAINTIFF AND APPELLANT, *v.* AYENDE, DEFENDANT AND APPELLEE.

APPEAL from the Second District Court of San Juan in an Action for Damages.

No. 2926.—Decided July 28, 1923.

DAMAGES— NEGLIGENCE— AUTOMOBILE— SKIDDING. — In this action for damages caused by an automobile which in skidding mortally injured the plaintiff's decedent who was on the side of the road, it was *held:* That the mere fact that a motor vehicle skids is not of itself proof of negligence, unless it is shown that the driver was negligent in operating the autombile, or that he did some act which a person of ordinary prudence would not have done under similar circumstances.

ID.—ID.—DELIBERATION.—One compelled to act in an emergency is not held responsible for failure to exercise the better judgment which might result from deliberation, and that rule is applicable as between the person who acts and the person by whose fault he is compelled to act without time for deliberation.

ID.—ID.—ID.—Failure to have chains on the tires of a motor vehicle which is being driven on a tarred road shortly after a rain is not negligence *per se.*

The facts are stated in the opinion.

*Mr. E. Campillo* for the appellant.

*Mr. S. Suau* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an action for damages claimed by the plaintiff for the death of her daughter as the result of injuries received in an accident with a truck belonging to the defendant.

The plaintiff alleged substantially that on or about October 27, 1921, at or near kilometer 17 on the central

highway a truck employed in the transportation of merchandise in general driven by Cecilio Pérez, an agent and employee of the defendant, while coming from the direction of Caguas towards San Juan, skidded on the wet road and one of the front wheels fell into the right-hand ditch; that thereupon the chauffeur negligently gave the truck such impulse that when the wheel jumped out of the ditch it skidded and described a complete circle, one of the rear wheels falling into the left-hand ditch where it struck Santos Aquilina de Jesús and caught and crushed one of her legs so that it had to be amputated; that the said Santos de Jesús died later as a result of the blows and injuries received in the accident; that the deceased left no descendants and was living with the plaintiff, whom she supported with her wages, the plaintiff being her heir; that the plaintiff has suffered damages in the loss of her daughter to the estimated amount of $5,000.

The defendant denied all of the allegations of the complaint and as new matter alleged that the accident which caused the death of Santos Aquilina de Jesús was due exclusively to her passive attitude and contributory negligence, she assuming all risk by standing quietly at the place where she was struck; that the defendant's employee can not be charged with fault, because he observed the laws of the road and managed the truck with the caution and diligence of a good father of a family.

After trial the court below rendered judgment declaring that "after having inspected the place where the accident referred to occurred the court is of the opinion that the negligence of the chauffeur who was driving the defendant's truck has not been shown as the proximate cause of the accident, and therefore it dismisses the complaint without special imposition of costs."

Although the trial court did not file separate findings and conclusions, the appellant assigns the following errors:

(*a*) Acceptance of the new matter alleged as defense. (*b*) Finding that the truck was left without control because of the fall of the chauffeur. (*c*) Concluding that the negligence of the chauffeur as the proximate cause of the accident was not shown.

These assignments refer to an erroneous weighing of the evidence.

The cause of action in this case rests on the primary fact of the skidding of the truck belonging to the defendant, the consequence of which was the accident in which Santos Aquilina de Jesús was killed. She was seeking shelter from the rain under a mango tree on the side of the road and near her was Matías Cotto, a road-keeper of the Department of the Interior. He was a witness for the plaintiff and the material part of his testimony, which we consider of exceptional importance, was as follows:

"Did you know Tita de Jesús?—Yes, I knew her about October 27, 1921.—Did you see her?—Yes.—Did you speak to her at any time on that day?—She was sheltered from the rain at kilometer 17, hectometer 4, under a mango tree.—Did anything happen to Tita de Jesús?—She was standing at the right under the mango tree and I was sitting on the root of the tree when we saw a truck coming towards Río Piedras. When the truck arrived at a short distance from us we noticed that it skidded rapidly and the wheel went down into the left ditch and the truck came backwards towards us. As it was coming upon us José Santa yelled to me that the truck would kill me and I said to Tita that it would kill us and ran down the ditch believing that she was coming behind me, but she, in an attempt to save her life, ran upwards and threw one leg over the ditch wall, but the other was caught by the chassis. The front part of the truck was towards Caguas and the rear towards San Juan.— What did she do in trying to save herself?—I thought that she was coming behind me when I called to her to run and ran down the ditch. Then I heard the impact of the truck and her cry and looked back and saw her caught with one leg over the wall and holding onto the tree.—Was that a rainy day?—Yes.—Was the road wet? —Yes.—Did the truck's wheels carry chains?—No.—I want to know whether there were chains on the tires.—None."

This testimony was corroborated by José Santa, a witness for the plaintiff, whose material testimony was as follows:

"When the truck left the right-hand ditch what did it do?—When it skidded it turned end for end.—In what position was it left?—It headed down the road, and when I saw that I called to Matías and the woman to run.—Where did the truck then fall?—In front of the place where she was.—In the other ditch?—In the same ditch where she was.—In what position did the truck remain; headed towards San Juan or towards Caguas?—Towards Caguas, so that the front was where the rear had been.—It turned completely around? —Yes.—What happened to Aquilina de Jesús?—When Matías fled down the ditch she grasped the wall of the ditch.—What is the height of the wall?—About one meter.—Did she go up the ditch? Yes.—Where did the truck catch her?—The end of the body of the truck caught her leg.—At what distance from the ditch was she caught?—About one meter.—Then, she had climbed one meter?—Yes. —Did you say that the chauffeur had fallen?—He fell forward and remained on the wall, and when the car turned it was empty.—The chauffeur had fallen out?—Yes.—Were you sheltering yourself from the rain under a mango tree on the left side of the road looking towards Caguas?—Yes.—Were Tita de Jesús and the road-keeper in front of you on the other side of the road?—They were farther down the road and I was here.—Almost in front?—Yes."

This testimony shows two things. The first relates to the position of the deceased and we can not assume, as the appellant does, that the judgment of the trial court was based on the special defense set up by the defendant that the accident was due to the contributory negligence of the deceased in attempting to save herself by climbing towards the tree and not following the example of the road-keeper who was near her. This would have been a feeble defense, for in emergent circumstances when a person is suddenly confronted with imminent danger, although the instinct of preservation acts with full force, yet he can not be expected to exercise such good judgment or discretion as that its omission might be considered negligence. The deceased, however, had to act with the rapidity of thought and she had good

reason to believe that by climbing above the tree under which she was sheltered she was out of the threatened danger which in spite of her efforts caused her death.

The second thing shown by the testimony is the attitude of the chauffeur who was driving the defendant's truck. Two elements determined the conduct of the said chauffeur: One may be called of emergency independent of his will, the skidding of the truck owing to the wet surface of the road; and the other dependent upon his instinct of preservation rather than upon his will.

As regards the first, we may lay down as a general rule that the mere fact that a motor vehicle skids is not of itself proof of negligence, unless it is shown that the driver was negligent in operating the machine, or that he did some act which a person of ordinary prudence would not have done under the same circumstances, and both of these circumstances were considered by the court below and there is nothing in the evidence to show error on the part of the court in weighing it in that sense.

"The mere fact of the skidding of a car is not of itself such evidence of negligence as to render the owner liable for an injury in consequence thereof, and whether the driver was negligent in his management of the machine is ordinarily a question for the jury.

"In an action to recover for injuries caused by an automobile which skidded and struck the plaintiff while standing upon the sidewalk, it was held that there must be a finding justified by the evidence, either that the chauffeur was negligent in the operation of the machine, that he did some act which a prudent person would not have done, or omitted some act which a prudent person would have done in the operation of the vehicle, or that in some other respects the defendant or his agents were negligent." Huddy on Automobiles, 5th ed., 416, 415.

With respect to the second element we will say that the same reasoning adopted with reference to the deceased in acting in the face of danger for her own protection may be applied to the chauffeur during the occurrences of the case.

Therefore, we must presume that when he found that he had
lost control of the truck and saw himself carried by irresisti-
ble forces into danger, he was at the propitious moment to
claim the benefit of the truly human rule that ''one compelled
to act in an emergency is not held responsible for failure to
exercise the better judgment which might result from deliber-
ation, since that rule is applicable as between the person
who acts and the person by whose fault he is compelled to
act without time for deliberation.''   20 R. C. L. 30.

As regards the legal consequences that the appellant
attempts to deduce by attributing the skidding of the truck
to the failure to use chains, we find it necessary to cite as a
basis for our conclusions that part of her brief which reads
as follows:

''It is a fact supported by all of the evidence of the plaintiff and
the defendant that it had been raining and at that moment it was
raining, and although he knew this the defendant's chauffeur did
not put the chains on the tires, the sole purpose of such chains being
to avoid the skidding of the truck.

''As it was a rainy day and the chauffeur knew that the truck
was traveling light and would easily skid, and, especially, as he
knew that the road was tarred and hogbacked because he had
frequently traveled on it during six years, these facts are no excuse.''

The foregoing admission of the essential facts in this
case simplifies the discussion and reduces all inquiry to
whether the failure to use chains on the tires of a truck in
circumstances like those of this case is statutory negligence
or negligence as a matter of proof.

To begin with, we find no statute in Porto Rico imposing
as a lawful duty the use of chains on the tires of motor
vehicles in cases like the present.  In general it seems to
have been customary to use them on automobiles in cases
of emergency, as for example when traveling in dangerous
places where the road is wet, or in cold countries where the
snow often covers the roads during a part of the winter;

but the same custom does not seem to have been followed in cases of heavier motor vehicles like trucks, for, on the contrary, the tendency that seems to prevail is the prohibition of the use of chains on them. In New York, for example, there is no statute compelling trucks to carry chains, and in fact the highway commissioner has been expressly authorized to forbid their use. Section 24, Highway Law, McKinney's Consolidated Laws, Book 24. The reason for the statute seems to be that trucks are very heavy vehicles and chains on their tires would cut into the metal of the roads and ultimately destroy it. It follows, therefore, from the law and the facts that the chauffeur can not be charged with the omission of an act not even sanctioned by custom, the case being, therefore, one of emergency or unavoidable accident where the chauffeur was prevented from using the controlling force of his ability and judgment to avoid an accident for which otherwise he would have been responsible.

The appellant, however, seems to lay great stress on the question of whether, after the truck skidded and collided with the wall, the chauffeur jumped off or fell out of the vehicle; but we do not see how this could have any bearing on his liability. Given the circumstances of the accident, the chauffeur's life was endangered if he fell from the truck, and, on the other hand, if he jumped off it was the instinct of preservation that impelled him to do so. For a better ilustration of a similar situation we quote the following:

"It follows from what has been said that anything which operates to deprive a person of the ability to exercise his intellectual powers and guide his acts thereby will relieve him of an imputation of negligence that otherwise might arise from his conduct. Emergencies or sudden perils illustrate this proposition. The rule judicially stated is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence. Accordingly it was held that a restaurant owner was not liable for the act of an employee in attempt-

ing to remove a burning lamp. It appeared that the employee discovered a burning and dangerous gasoline lamp, and, taking it up, attempted to carry it away. In doing this his clothing caught fire. He then threw the lamp from him, when it exploded and severely injured the plaintiff. * * * 'Such an act, done in such extreme circumstances, is not to be judged by the rules which are applicable ordinarily to acts done in cool blood, with time and opportunity for the party to consider the consequences and the methods of the act he is about to do. The decisions of this and other courts are very numerous in the application of the principle to cases in which persons suddenly placed in positions of peril and impending danger do things which ordinarily would be acts of negligence.' " 20 R. C. L. 29–30.

Finally, when, as in this case, it appears also that the court inspected the scene of the accident and nothing has been brought before this court to place it in the same position as was the trial court, it is to be presumed that the trial judge rendered a correct judgment in accordance with the law.

For the foregoing reasons the judgment of the trial court must be

*Affirmed.*

Justices Aldrey and Wolf concurred.

Chief Justice Del Toro and Justice Hutchison dissented.